**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**UNITED STATES OF AMERICA,**

**vs.**                                          **Case No.  4:07cr60-RH**
                                                 **Case No.  4:09cv364-RH/WCS**

**TARIAN GREGORY LEE,**

         **Defendant.**
_____/


### REPORT AND RECOMMENDATION

Defendant was convicted of possession of marijuana, MDMA (ecstasy), and cocaine on August 16, 2007, and, on the same date, possession of a firearm having been convicted of a felony.  Doc. 39 (verdict).  He was sentenced to 136 months in prison, to be followed by 6 years of supervised release.  Doc. 44.

Pending in this case is a motion to vacate and set aside a sentence filed pursuant to 28 U.S.C. § 2255.  Doc. 66.  The statement and explanation of claims is continued in the supporting memorandum.  Doc. 67.  The United States filed a response.  Doc. 70.  Defendant filed a reply.  Doc. 71.

Defendant was granted leave to add ground nine.  Doc. 74.  Ground nine is in doc. 73.  The United States filed a response.  Doc. 75.  Defendant filed an amended

reply.  Doc. 79 (replacing doc. 76; see doc. 80).  As will be explained ahead, the reply

attempts to add new, untimely claims.

Defendant filed a motion to supplement an issue.  Doc. 83.  As later clarified, the

supplement will be considered only to the extent that it supports claims previously

presented.  Doc. 86.  Defendant has not sought leave to amend his § 2255 motion as

contemplated by that order, and this motion to supplement will not be considered to the

extent that it presents new claims.  *Id.*

**Legal standards governing this motion**

Errors raised and disposed of on direct appeal are not considered on a § 2255

motion absent an intervening change of law.  Davis v. United States, 417 U.S. 333, 342,

94 S.Ct. 2298, 2303, 41 L.Ed.2d 109 (1974); United States v. Nyhuis, 211 F.3d 1340 ,

1343 (11th Cir. 2000) (citation omitted).  "A rejected claim does not merit rehearing on a

different, but previously available, legal theory."  Nyhuis, 211 F.3d at 1343, citation

omitted.  If the issue was not raised and decided against Defendant on appeal, on the

other hand, it is procedurally barred and will not be reviewed absent a showing of cause

and prejudice.  *Id.*, at 1344 (citations and footnote omitted).  "Ineffective assistance of

counsel may satisfy the cause exception to a procedural bar," but "the claim of

ineffective assistance must have merit."  Nyhuis, 211 F.3d at 1344, citation omitted.

Ineffective assistance of counsel may be raised in a § 2255 motion, whether or not it

could be raised on direct appeal.  Massaro v. United States, 538 U.S. 500, 504, 123

S.Ct. 1690, 1693-1694, 155 L.Ed. 2d 714 (2003).

Ineffective assistance of counsel claims are governed by Strickland v.

Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674

(1984).  Under the two part test of <u>Strickland</u>, Defendant must demonstrate both deficient performance and prejudice to the outcome.

"A convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  "Conclusory allegations of ineffective assistance are insufficient."  <u>Wilson v. United States</u>, 962 F.2d 996, 998 (11th Cir. 1992).  In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  <u>Strickland</u>, 466 U.S. at 690, 104 S.Ct. at 2066.

For prejudice, Defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Strickland</u>, 466 U.S. at 694, 104 S.Ct. at 2068.

**Legal analysis**

**Ground one**

**Hearsay evidence**

Defendant contends that his trial counsel was ineffective for failing to object to hearsay evidence that the confidential informant bought ecstasy (MDMA) pills from Defendant on about August 2, 2007, and on about August 15, 2007.  Doc. 66, p. 4 on ECF (Electronic Case Filing).[1]  In his memorandum, Defendant identifies testimony by Investigators Brian Pearson and Bobby Green at pages 25, 28, 29, 68, 86, 88, and 89 of

---

[1] Hereafter the page numbers referenced will be to the page numbers assigned by the electronic docket rather than to the page numbers on the original paper document.

the transcript which, he contends, contains the improper hearsay evidence.  Doc. 67, pp. 3-4.  He argues that his attorney was ineffective for failing to make a timely objection to this hearsay evidence and to move for a mistrial.  *Id.*

Brian Pearson, an Investigator for the Leon County Sheriff, was the undercover officer who drove the confidential informant to the controlled buy on August 2, 2007. Doc. 59 (transcript), p. 22.  He said he saw the informant make contact with a black male in the parking lot and then proceed up the stairwell to Defendant's residence.  *Id.* Investigator Pearson testified that he saw the confidential informant come out of the apartment and return with the drugs that were "purchased inside the residence." *Id.*, p. 25.  He said that Defendant's blue Dodge Durango was in the parking lot.  *Id.*

With respect to the second controlled buy on August 15, 2007, Pearson said that he was present when the informant called Defendant.  *Id.*, p. 27.  He said he then reviewed the informant's telephone and could see the number dialed by the informant, a telephone number registered to Defendant.  *Id.*, p. 28.  He also said the informant was searched after the buy and ecstasy pills were recovered.  *Id.*, p. 28.  Investigator Bobby Green testified as to what he saw during the controlled buy on August 15, 2007, and during the search on August 16, 2007.  *Id.*, p. 86, 88, 89.

Defendant's claim is without merit as to these portions of the record cited by Defendant (pages 25, 28, 29, 86, 88, and 89).  Investigators Pearson and Green testified only as to what they saw.  The testimony that the drugs on August 2, 2007, were "purchased from inside the residence" was not hearsay, but was a lay opinion properly drawn from eye-witness observations.  None of this was hearsay evidence.

The only hearsay is on page 68 of the transcript.  Investigator Pearson was cross

examined about the August 2, 2007, controlled buy.  Pearson said he himself did not

know who the black male in the parking lot was, but he believed the person was

Defendant.   *Id.*, p. 68.  He then testified that the confidential informant told him that the

black male subject he saw in the parking lot was Defendant.  *Id.*  Had counsel for

Defendant objected to the testimony as to what the informant said about the identity of

the black male, the objection would have been sustained as to the truth of the matter

asserted.

It is recognized that Defendant denied he sold ecstasy pills on August 2, 2007, or

August 15, 2007, and said he thought he had been at the apartment on August 3rd or

4th, but not on August 2nd.  *Id.*, pp. 164-165.  That he was selling drugs on August 2,

2007, was of some importance, even though he was not charged with a crime on that

date.  But the hearsay evidence of this related offense was of little importance when

compared to the weight of the evidence that Defendant was dealing drugs out of that

apartment on August 15, 2007, and August 16, 2007.  There is evidence that the

apartment was leased by Defendant's girlfriend, he had a key to the apartment, he had

his girlfriend's car keys, she had gone to Miami on a bus, he was at the apartment when

the search was conducted on August 16, 2007, he let another person, Wade,[2] into the

apartment that day, Wade did not have a key to the apartment and was not living there,

and Defendant admitted that a number of his personal documents (a rental car receipt

in his name, bank statement in his name, receipt from a clerk of court with his name,

_____

[2] Worth Wade was with Defendant coming out of the apartment when the search
was conducted.  Doc. 59, p. 74-75.

reinstated driver's license with his name, towing receipt with his name, his birth

certificate, his fingerprint card, and his cell phone bill) were all found in the apartment on

August 16, 2007, during the search. *Id.*, pp. 155-156, 90, 161-163. Evidence of drug

dealing and Defendant's complicity in it, was found all over the apartment, and included:

a bag of marijuana on the kitchen counter; a digital scale in the cabinet in the kitchen

and a kitchen drawer; Crown Royal bags with MDMA and cocaine inside; a mold to

press drugs; a poster showing a photograph of Defendant, ziploc baggies, and male

clothing found in the south bedroom; a computer with a screen saver of the same photo

of Defendant as the poster; a duffle bag with a loaded rifle; a safe containing drugs and

money in the closet of the bedroom; and the key to that safe was in Defendant's pocket.

*Id.*, pp. 76-83. The poster with Defendant's photograph depicted him holding a firearm.[3]

*Id.*, p. 150. Prejudice to the outcome for failing to object to hearsay as to the identity of

the person the informant saw on August 2, 2007, has not been shown.

### Sufficiency of the evidence

Defendant contends that his attorney was ineffective for failing to move for a

judgment of acquittal due to insufficiency of evidence. Doc. 66, p. 4; doc. 67, pp. 4-5.

The standard for such a motion favors the Government:

---

[3] Defendant presented evidence that the poster was created to promote his work
as a "gangster rapper," that the real firearm in his hands on the poster had been created
with PhotoShop, and that he had not been holding a real rifle when the photo had been
taken. Instead, it was asserted that he was holding a plastic gun. Doc. 59, pp. 150-
151, 171-174. The witness who presented this evidence of using PhotoShop to create
the photo had recently been incarcerated in the Leon County Jail, and had two felony
drug offenses and one felony battery conviction. *Id.*, pp. 175, 177. The jury was
entitled to believe or disbelieve this evidence.

"In considering a motion for the entry of a judgment of acquittal, a district
court 'must view the evidence in the light most favorable to the
government, and determine whether a reasonable jury could have found
the defendant guilty beyond a reasonable doubt.' " *United States v.
Miranda*, 425 F.3d 953, 959 (11th Cir. 2005) (quoting *United States v.
Sellers*, 871 F.2d 1019, 1021 (11th Cir. 1989)).  "It is not necessary for the
evidence to exclude every reasonable hypothesis of innocence or be
wholly inconsistent with every conclusion except that of guilt . . . "  *United
States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (*en banc*); see
*Sellers*, 871 F.2d at 1021.  "The jury is free to choose between or among
the reasonable conclusions to be drawn from the evidence presented at
trial, and the court must accept all reasonable inferences and credibility
determinations made by the jury." *Sellers*, 871 F.2d at 1021 (internal
quotations and citations omitted).

United States v. Garcia, 447 F.3d 1327, 1334 (11th Cir. 2006).

The evidence concerning Defendant's drug dealing and connection to the

apartment was very strong and is described above.  Of perhaps greatest evidentiary

import was the safe that was found in the closet.  It contained 324 grams of powder

cocaine, $14,500 in cash (which included some of the "buy" money from the controlled

purchases), and Defendant had the key to that safe in his pocket.  *Id.*, pp. 55-59, 66, 71,

83, 90-92.

The evidence to support count two, the firearm charge, was equally strong.  The

loaded rifle was seized in a duffle bag in the same bedroom closet.  Doc. 59, pp. 45, 48,

82-83, 137.  The poster with Defendant's photograph showed him holding an assault

rifle.  Further, while Defendant was housed in the Leon County Jail, he called his

grandmother on the telephone and the call was recorded.  *Id.*, pp. 130-135.  The

Government states in its response that Defendant said to his grandmother during this

telephone call, that the police had come into "me and Ashley's apartment *we had*" and

seized "all kinds of guns and everything."  Doc. 70, p. 7, citing Exhibit 31(b), p. 4

(emphasis added).  When she asked him, "what were you doing with that," he replied, "*I just had one.*"  *Id.* (emphasis added).  There was no dispute that Defendant had a prior felony convictions and that the firearm had been transported in interstate commerce.  Doc. 59, p. 137 (stipulation).  Attorney error for not moving for judgment of acquittal, or prejudice to the outcome, has not been shown.

### Mistrial due to question about the nature of his prior felonies

Petitioner was asked at trial, and on cross examination, whether he had been convicted of aggravated assault with a deadly weapon on or about August 18, 1998, and he said "yes."  Doc. 59, p. 167.  When asked if he had in fact been convicted of two counts, Defendant's attorney objected and the objection was sustained.  *Id.*  Counsel for the Government then established that Defendant had been convicted of six felonies.  *Id.*, p. 168.  Defendant contends his attorney was ineffective for failing to then move for a mistrial.  Doc. 66, p. 4; doc. 67, p. 5.

On appeal, the Government conceded that the questions into the nature of the felony convictions in this context were improper.  Doc. 63, p. 4, Eleventh Circuit opinion.  The Eleventh Circuit rejected the claim, however, finding that the court sustained the objection, gave a limiting instruction in the final instructions,[4] and concluded that in the context of the entire trial, the questions did not have a substantial influence on the outcome, and "sufficient evidence uninfected by error supports the verdict."  *Id.*, pp. 5-6.  The Eleventh Circuit found no reversible error, and Defendant has not shown attorney error or prejudice to the outcome for failing to move for a mistrial.

---

[4] Doc. 59, p. 208.

**Ground two**

Defendant claims that his attorney was ineffective because he did not move to dismiss the indictment for violation of the Speedy Trial Act, 18 U.S.C. § 3161(b) and (c)(1).  Defendant argues that he was arrested on August 16, 2007, yet he was not indicted until October 3, 2007, beyond the 30 day limit of § 3161(b).  He also argues that he was not brought to trial until February 12, 2008, beyond the 70 day limit of § 3162(c)(1).  Doc. 67, p. 6.

Defendant was arrested by the state on state charges on August 16, 2007.  He was not indicted by the United States until October 3, 2007.  Doc. 1.  He was arrested at the Leon County Jail on the federal indictment on November 28, 2007, had a first appearance in this court that same day, and trial was set for January 22, 2008.  Docs. 7-13.  The trial commenced on January 23, 2008, with the impaneling of the jury.  Docs. 21 and 29.

Since Defendant did not come into federal custody until November 28, 2007, that is the day that the speedy trial period began to run, and the trial commenced within the 70 day period.  The arrest was after the indictment, not before, so the 30 day period has no application.  Baxter v. United States, 140 Fed.Appx. 82, 83-84 (11th Cir. Jul 6, 2005) (not selected for publication in the Federal Reporter, No. 04-16666); United States v. Shahryar, 719 F.2d 1522, 1525 (11th Cir. 1983) ("Thus, if one is held by state officers on a state charge and subsequently turned over to federal authorities for federal prosecution, the starting date for purposes of the Act is the date that the defendant is delivered into federal custody."); United States v. Russo, 796 F.2d 1443, 1450-1451

(11th Cir. 1986) (even if the federal government was extensively involved in the investigation, the speedy trial clock does not run when the state makes an arrest, but only begins when the defendant comes into federal custody). This ineffective assistance of counsel claim is without merit.

**Ground three**

Defendant asserts that his attorney was ineffective for failing to object to the evidence of his participation in the drug transactions on August 2, 2007, and August 15, 2007. He contends that the evidence did not clearly identify him and was insufficient to establish his involvement. Doc. 67, p. 7. Specifically, he asserts that the Government should have produced the informant "for firsthand knowledge of the alleged extrinsic acts and identity of the alleged perpetrator." *Id.*

This is a rehash of the claim concerning hearsay evidence. Most of the evidence was not hearsay and was adequate to identify Defendant as the person who made the drug sales on both days. This is not a sufficient basis for an ineffective assistance of counsel claim for the reasons previously discussed.

**Ground four**

Defendant argues that his attorney was ineffective for failing to request jury instructions on mere presence and that another person committed the crimes. Doc. 66, p. 8.

The jury was instructed that Defendant had to be found to have committed the offenses knowingly, not by mistake or accident. Doc. 59, p. 207. The jury was instructed that Defendant was not on trial for the controlled buys on August 2, 2007, and

August 15, 2007, and that that evidence could be considered only as to the issue of whether Defendant *intended* to commit the offenses on August 16, 2007. *Id.*, pp. 208-209. From these instructions the jury would have known that they should acquit Defendant if he were "merely present," without knowingly and intentionally committing the offenses, or if another person committed the crimes.

Further, The evidence shows far more than mere presence and gave no credible indication that anyone else was culpable. Defendant sold drugs on August 2, 2007, and August 15, 2007, out of that same apartment. He was present during the search on August 16, 2007, he had the key to the safe in his pocket, drugs and buy money were in the safe, and drug dealing evidence was all over his apartment. That $14,500 in cash was in the safe with some of the buy money from the August 2nd and 15h sales, along with the drugs, scales, and packaging, shows that Defendant had been in the drug business for sometime. Worth Wade did not have a key to the apartment and, according to Defendant, did not live there, and Defendant identifies no one else with access to the apartment. This claim of ineffectiveness is not persuasive.

**Ground five**

Defendant argues that his attorney was ineffective for failing to move for separate trials on the two charges. He contends that the evidence of his prior felonies should not have been allowed to prejudice his trial on the drug offense. Doc. 67, p. 8.

A motion for severance would not have been granted since the offenses alleged in counts one and two were "based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." FED. R. CRIM. P. 8(a). *See*,

United States v. Williams, 177 Fed.Appx. 914, 924 (11th Cir.) (not selected for publication in the Federal Reporter, No. 04-14914), *cert. denied*, 549 U.S. 915 (2006) (finding that denial of a motion to sever was proper because:  "The charge was based on the same act or transaction as the drug charges, since the weapons and the drugs were found at the same time and one of the weapons was found in the same place as the drugs.").  While severance may be granted in the court's discretion to avoid prejudice, FED. R. CRIM. P. 14, the prejudice here was mitigated by the court's instruction that the prior felonies could not be considered except as to Defendant's credibility and with respect to proof of the firearm charge, count two.  Doc. 59, p. 208.  Neither attorney error nor prejudice to the outcome has been shown.

**Ground six**

Defendant claims that his attorney was ineffective for failing to call his girlfriend, Ashley Andrews, to testify so that he himself would not have to testify.  Doc. 67, p. 9.  Ms. Andrews was the lessee of the apartment.  *Id.*  Defendant asserts that Ms. Andrews would have testified that Defendant did not live in her apartment, that she gave him the key "while she was out of town," that she never knew Defendant to sell drugs, that all of Defendant's paperwork was in the apartment because he had put the paperwork in the apartment to make room in his truck to move her things into the apartment, that she had the poster with the photo of Defendant on it with an assault rifle because she is the mother of Defendant's daughter, that she saw Wade with a long gun in the parking lot, and that she did not know the purpose of the safe in her apartment.  Doc. 71, pp. 36-37.

Defendant has not presented an affidavit from Ms. Andrews expressing her willingness to testify and the details of her anticipated testimony.  This, standing alone, defeats the claim.[5]  It is doubtful that Ms. Andrews would have been a helpful witness, and the lack of an affidavit is telling.[6]  She was not in Tallahassee when the offenses were committed, and she never came back (despite Defendant's assertions that he had recently moved her furniture into the apartment).  Defendant's attorney, William Clark, states in his affidavit that since Ms. Andrews "had not been in Tallahassee for approximately 1 1/2 to 2 weeks before Mr. Lee's arrest, and could not explain his presence in her apartment, I [chose] not to call her as a witness."  Doc. 70-1, p. 1.  Mr. Clark also stated that Defendant made the decision to testify, and that Defendant had a "somewhat complicated tale as to how he came to be arrested and there were no witnesses, other than himself, who could tell the story."  *Id.*  This ineffectiveness claim is unsupported and unpersuasive.

**Ground seven**

---

[5] A defendant's conclusory allegations about the testimony of uncalled witnesses are insufficient to state a claim of ineffective assistance of counsel.  *See* Aldrich v. Wainwright, 777 F.2d 630, 636-37 (11th Cir.1985), *cert. denied*, 479 U.S. 918 (1986); Bolder v. Armontrout, 921 F.2d 1359, 1363-1364 (8th Cir.1990), *cert. denied*, 502 U.S. 850 (1991); United States v. Vargas, 920 F.2d 167, 169-170 (2d Cir.1990), *cert. denied*, 502 U.S. 826 (1991).

[6] Defendant testified that Ms. Andrews had his baby on October 2, 2007, and thus was very pregnant in August, 2007.  Doc. 59, pp. 154-155.  She was not in Tallahassee on August 16, 2007, when the apartment was searched.  *Id.*, p. 155. Defendant had the key to her apartment, and she had given it to Defendant when she "went out of town."  *Id.* and p. 157.  Defendant also had her car key.  *Id.*, p. 157.  She traveled by bus rather than her own car, in an advanced state of pregnancy with Defendant's child.  *Id.*, pp. 158-159.  She never came back.  *Id.*, p. 158.

Defendant contends that his appellate counsel was ineffective for failing to raise a Confrontation Clause argument on appeal.[7]  Doc.67, p. 9.  The claim depends upon the arguments concerning the alleged hearsay evidence elicited from Investigators Pearson and Green.  *Id.*  Hearsay or Confrontation Clause errors provide no relief on appeal if it is clear beyond a reasonable doubt that the error did not contribute to the verdict obtained.  United States v. Caraballo, 595 F.3d 1214, 1229 n. 1 (11th Cir. 2010).  Here, however, there was no objection to the one instance of hearsay evidence, and on appeal the alleged error would be reviewed for plain error.  United States v. Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003).  Plain error is error that affects substantial rights.  FED. R. CRIM. P. 52(b).  As previously discussed, prejudice to the outcome was not shown by the admission of the evidence contrary to the hearsay rule, so it follows that

---

[7] Ineffective assistance of appellate counsel claims are analyzed under the test enunciated in Strickland v. Washington.  Grubbs v. Singletary, 120 F.3d 1174, 1176 (11th Cir. 1997); Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992).  With regard to attorney error, appellate counsel need not raise every nonfrivolous issue.  Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  463 U.S. at 751-752, 103 S.Ct. at 3313.  The "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  Smith v. Murray, 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986) (quoting Barnes).  "Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent. *See, e.g., Gray v. Greer*, 800 F.2d 644, 646 (C.A.7 1986) ('Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome')."  Smith v. Robbins, 528 U.S. 259, 288, 120 S.Ct. 746, 765, 145 L.Ed.2d 756 (2000).  To determine prejudice, the court reviews the merits of the omitted or poorly presented claim, and will find prejudice only where the claim would have a reasonable probability of success on appeal.  Heath v. Jones, 941 F.2d at 1136.

there was no plain error.  Defendant's appellate attorney did not err in failing to raise a Confrontation Clause claim on direct appeal.

**Ground eight**

When he filed the § 2255 motion, Defendant alleged that he was challenging his state convictions in state court.  Doc. 67, p. 10.  He argued that his enhanced sentence on count one pursuant to 21 U.S.C. § 851 (for three prior state felony cocaine convictions) is "unconstitutional," and asked this court to hold this claim in abeyance until he has succeeded in state court.  *Id.*  Defendant makes supplemental argument that three of his convictions are invalid due to Shelton v. Florida, No. 6:07cv839 (M.D. Fla. July 27, 2011).  Doc. 81, p. 1.

Defendant has not informed the court as to the status of the state post conviction litigation.  The Government, however, did not oppose the request for stay, citing United States v. Walker, 198 F.3d 811 (11th Cir.1999).  Doc. 70, p. 21.

A stay is not appropriate.  A § 2255 motion is available to challenge an enhanced sentence when the convictions that were used to enhance the sentence have been vacated.  United States v. Walker.  There is a one year limitations period for filing a § 2254 petition, however.  28 U.S.C. § 2244(d)(1).  The period runs from the latest of these dates:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1)(A)-(D).  While Defendant cannot amend his § 2255 motion to allege this kind of claim as a new claim in a pending § 2255 motion after the AEDPA one year period has expired,[8] he may file another § 2255 motion should the relevant state convictions be vacated.[9]  Johnson v. United States, 544 U.S. 295, 125 S.Ct. 1571, (2005).

Defendant is cautioned that if that happens, the new § 2255 motion must be timely filed.  The one year period for filing will run from the date that Defendant receives notice that the state conviction has been vacated.  544 U.S. at 310, 125 S.Ct. at 1582 (holding that the date that a defendant receives notice that the state conviction has been vacated is the date "on which the factual predicate of the claim . . . could have been discovered, § 2244(d)(1)(D), and refreshes the AEDPA one year period).  Defendant is also cautioned that the viability of such a claim will also be measured by

---

[8] In Farris v. United States, 333 F.3d 1211 (11th Cir. 2003), the Eleventh Circuit held that a defendant could not amend a pending § 2255 motion to allege for the first time that convictions used in sentencing had been vacated, if the new claim was filed beyond the one year period.  The court reasoned that the new claim did not relate back to claims that were timely filed.  333 F.3d at 1215-1216.

[9] When a Defendant, like the Defendant here, has already litigated one § 2255 motion, this kind of second § 2255 motion is not a successive motion under the AEDPA.  Stewart v. United States, 646 F.3d 856 (11th Cir. 2011)

whether he exercised due diligence in pursuant of the vacation of that conviction, measured from the time of the judgment in the case at bar.  *Id.*

For these reasons, ground eight fails to state a claim at this time, and a stay should not be granted.

**Ground nine**

Petitioner argues that his trial attorney was ineffective for failing to object to a sentencing enhancement of his base level pursuant to U.S.S.G. § 2k2.1(a)(3).  Doc. 73, p. 2.  He contends that base level 22 was error because the firearm was not an assault rifle as so defined in 18 U.S.C. § 921(a)(30).  *Id.*, pp. 3-4.  Defendant cites United States v. Jamieson, 202 F.3d 1293 (11th Cir. 2000).  Defendant argues that if his base level had started at 20, his sentencing level would have been 26, producing a sentencing range of 110-137 months.  He reasons that the court, which sentenced him to 136 months, might have sentenced him to less within the new range.  *Id.*, p. 5.

The claim of ineffectiveness is without merit because the underlying argument is without merit.  The Jamieson case was a 1997 case (No. 97-06142- CR-KLR, S.D. Fla.) which presumably involved the 1998 Sentencing Guidelines.  At that time, § 2K2.1(a)(3) referred to 18 U.S.C. § 921(a)(30) for the definition of the firearm at issue.  18 U.S.C. § 921(a)(30)(B) was repealed, however, in 1994.  Pub.L. 103-322, Title XI, § 110105(2), Sept. 13, 1994, 108 Stat. 2000.  Defendant was sentenced by judgment entered on April 29, 2008, and the 2007 Sentencing Guidelines applied.  Section 2K2.1(a)(3) then provided a base level of 22 if "the offense involved a (i) *semiautomatic firearm* [not an "assault" rifle] that is capable of accepting a large capacity magazine."  The Guideline

no longer referred to 18 U.S.C. § 921(a)(30)(B).  The firearm in this case was a semiautomatic capable of accepting a large magazine.  Therefore, the base level of 22 was correct.[10]

Defendant changes claims in his reply.  Doc. 79.  He first argues that the new U.S.S.G. § 2K2.1 conflicts with Congressional intent that assault weapons should generally be legal to possess (overlooking the fact that there is a difference between possession and possession as a convicted felon).  He also argues that increasing the sentence for possession of a semiautomatic firearm by means of a sentencing guideline is an illegal alteration of the elements of the offense.  Finally, Defendant contends that his prior conviction for aggravated assault with a deadly weapon was not a crime of violence as defined by § 2K2.1(a)(3)(B).  Doc. 79, pp. 3-4.  He contends that his attorney was ineffective as to these issues, causing him to enter an involuntary plea. *Id.*, p. 4.

These claims are entirely new.  They are not the same as complaining about the assignment of base level 22 due to a failure to follow the definition of an assault rifle in 18 U.S.C.  921(a)(30)(B), and they do not relate back to that claim.  Farris v. United States, *supra*, 333 F.3d at 1215-1216.  These new claims are also untimely.  The Eleventh Circuit's opinion denying Defendant's appeal was entered on March 10, 2009.  Defendant's conviction became final 90 days later, on June 8, 2009 , when the time for

_____

[10] The PSR seems to have erroneously assigned a base level of 26 in the narrative, citing § 2K2.1(a)(1) instead of § 2K2.1(a)(3), but the base level of 22 was correctly noted as the result.  PSR, ¶ 20.

a petition for writ of certiorari to the Supreme Court expired.[11]  Defendant did not file the claims raised in his reply, doc. 79, which was filed (under the mailbox rule) on August 31,  2010, beyond the one year limitation period.  The court should not address these untimely claims of ineffectiveness.

**New claims in doc. 83**

Defendant contends that his attorney was ineffective for failing to object that his sentence on count one was illegal because it exceeded the statutory maximum for marijuana.  Doc. 83.  He contends that the special verdict form was misleading because, while it gave the jury a choice between cocaine and MDMA, it did not mention the possibility that he was only involved with marijuana.  *Id.*, p. 3.

The claim was filed on December 8, 2011.  *Id.*  It is a new claim.  It does not relate back and is untimely, and should not be considered on the merits.

**Certificate of Appealability**

As amended effective December 1, 2009, § 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

---

[11] A judgment is final for purposes of § 2244(d)(1)(A) when the 90 day period for filing a petition for writ of certiorari – which runs from the date of the opinion rather than the mandate – expires, even if the petitioner does not seek review by certiorari.   Clay v. United States, 537 U.S. 522, 527, 123 S.Ct. 1072, 1076, 155 L.Ed.2d 88 (2003).

I find no substantial showing of the denial of a constitutional right.  § 2253(c)(2);

Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542

(2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, I

recommend that the court deny a certificate of appealability in its final order.

The second sentence of  new Rule 11(a) provides: "Before entering the final

order, the court may direct the parties to submit arguments on whether a certificate

should issue."  Any objections relevant to a certificate of appealability shall be made in a

timely objection to the district judge.  Failure to present argument in objections may

waive the argument that could have been presented.

**Conclusion**

For these reasons, it is **RECOMMENDED** that Defendant Tarian Gregory Lee's

motion to vacate and set aside a sentence filed pursuant to 28 U.S.C. § 2255, doc. 66,

as continued and amended in docs. 67 and 73, be **DENIED WITH PREJUDICE**, and

that a certificate of appealability be **DENIED** pursuant to § 2255 Rule 11(a).  It is further

**RECOMMENDED** that the court **CERTIFY** that any appeal is not taken in good faith and

leave to proceed *in forma pauperis* be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on March 15, 2012.

s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**